UNITED STATES of America

v.

BERKSHIRE FABRICATORS CO., Inc. and William F. Sullivan.

No. 6389.

United States District Court,
D. Rhode Island.

Jan. 31, 1955.

Jacob S. Temkin, U. S. Atty., Providence, R. I., for plaintiff.

Aram A. Arabian, Christopher Del Sesto, Providence, R. I., Gerald L. Wallace, New York City, Robert F. Bradford, Boston, Mass., Isaac C. Donner, New York City, for defendant.

DAY, District Judge.

The defendants on November 5, 1954, were found guilty by a jury upon an indictment which charged that they wilfully and knowingly attempted to defeat and evade the payment of income taxes due and owing by the corporate defendant for the fiscal year ending June 30, 1948, by filing and causing to be filed a false and fraudulent income tax return for the corporate defendant in violation of Title 26 U.S.C. § 145(b). During the trial the government established by conclusive evidence that the corporate defendant failed to include in said return receipts from sales made by it during the taxable year in the amount of $121,837.17 which if included therein would have yielded a net taxable income of $32,155.25 instead of a loss of $87,714.45 as claimed in said return.

One of the sales, the receipts from which were not reported, was a sale of certain metals on January 5, 1948, to the General Materials Corporation for the sum of $75,000.

The defendant, William F. Sullivan, exercising his constitutional right, elected not to testify during the trial concerning these unreported receipts although he signed the tax return in behalf of the corporate defendant and was its sole stockholder, president and treasurer during the taxable year.

On November 10, 1954, following their convictions each of the defendants filed identical motions for a new trial containing twenty-eight reasons in support thereof. Among these was the following:

> "(6) The defendant further relies upon newly discovered evidence which would negative the existence of any tax liability. In this regard *since the introduction of Government Exhibit 18, the defendant for the first time had notice* of the specific metals, weights, gauges and sizes and immediately sought out suppliers and has obtained evidence of said purchases, costs and amounts which would show no deficiency or tax due." (Emphasis supplied.)

Exhibit 18 to which reference is made contained a list of the metals sold to General Materials Corporation and was, the evidence established, prepared by representatives of the corporate defendant and delivered to the General Materials Corporation at the time of the sale of said metals. Explicit reference to this list was made in the agreement of sale dated December 17, 1947, Government Exhibit 17.

Thus it is clear that in their motions for a new trial each of the defendants represented to this Court it was *not* until the trial was in progress that the defendants had notice of the specific metals, weights, gauges and sizes sold to General Materials Corporation. Each of these defendants also represented that he then immediately sought out *suppliers* and has since said date obtained evidence of said purchases, costs and amounts.

These representations were definite and without ambiguity. They were made presumably to show due diligence by these defendants in their efforts to find newly discovered evidence.

The motions for a new trial filed on November 10, 1954, were heard by me on December 10, 1954. At the outset of said hearing counsel for defendants requested and received permission from me to withdraw reason (6) set forth above and reason (7) without prejudice from my consideration. He stated that his purpose in so doing was that there was certain evidence "which we have not yet sufficiently prepared in affidavit form". Lengthy arguments were made by counsel for the defendants in support of the motions limited to the remaining reasons set forth therein. An argument in opposition to the motions was then made by counsel for the government at the conclusion of which each of the motions was denied.

On January 6, 1955, each of the defendants filed identical motions for a

new trial upon the ground of newly discovered evidence with supporting affidavits as to the alleged newly discovered evidence. The affiants therein are Aram A. Arabian, Esquire, one of the attorneys who appeared herein for the defendants, the defendant, William F. Sullivan, one Irving J. Moritt and one Sigmund Baer.

Arguments on these motions were heard on January 17, 1955, and at the conclusion thereof I reserved decision. During the hearing the government filed counter affidavits.

The affidavits in support of the motions for a new trial relate solely to the sale of metals by the corporate defendant to the General Materials Corporation in the amount of $75,000. During the trial the government established by uncontradicted evidence that this sale was made on January 5, 1948, that two checks amounting to $75,000 payable to the corporate defendant in payment of the purchase price were delivered to it, were duly endorsed and deposited to its credit in its checking account. The transaction was not recorded as a sale on its books and the proceeds were credited in favor of the defendant William F. Sullivan on its books.

Prior to the commencement of the trial the government served a subpoena duces tecum upon Berkshire Fabricators Co., Inc., commanding it to produce at the trial all its books and records for the fiscal years ending June 30, 1947 and June 30, 1948. In open court counsel for the defendants stated that he had been unable to comply entirely with the subpoena duces tecum because he had been informed that the records for the fiscal year ending June 30, 1947, were not available. No evidence was presented during the trial to show why these records were not then available or why they were not produced as commanded.

Although during the trial the defendants produced some evidence of a general nature to the effect that the corporate defendant at the time of its organization acquired an indefinite quantity of aluminum and stainless steel metals similar to those sold to General Materials Corporation from a partnership of which the defendant Sullivan was a member, no evidence of exact or nearly exact amounts thereof was presented. Similarly indefinite evidence as to certain purchases of like metals during 1946 was given but the identity of the supplier or suppliers thereof was never revealed. No definite evidence as to the cost or deliveries of such metals was ever submitted. Nor was any explanation of its nonproduction ever made or attempted. This was the situation despite frequent admonitions by me to defendants' counsel that better evidence as to these items should be forthcoming and assurances from counsel that he hoped and expected to prove the cost of said aluminum and stainless steel sheet metals.

The alleged newly discovered evidence upon which the defendants now rely is designed to explain the absence of the defendants' records of costs for the year ending June 30, 1947, and to establish the cost of the metals sold to General Materials Corporation.

■ It is well established in the federal courts that a party seeking a new trial upon the ground of newly discovered evidence under Rule 33 of the Federal Rules of Criminal Procedure, 18 U.S. C.A., must satisfy certain basic requirements. These basic requirements are clearly set forth in Johnson v. United States, 8 Cir., 32 F.2d 127, at page 130, as the following: "There must ordinarily be present and concur five verities, to wit: (a) The evidence must be in fact, newly discovered, i. e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an ac-

quittal." To the same effect see Wagner v. United States, 9 Cir., 118 F.2d 801, 802; Thompson v. United States, 88 U.S. App.D.C. 235, 188 F.2d 652, 653; United States v. Rutkin, 3 Cir., 208 F.2d 647.

■ Insofar as the newly discovered evidence purports to account for the non-production of cost records for the fiscal year ending June 30, 1947, it is obvious that such evidence has not been discovered since the trial. The copies of the report of John J. Curran and certificate of Walter E. Shea attached to the affidavit of the defendant Sullivan show conclusively that this evidence was available and known to the defendants for many months prior to the trial. Incidentally, John J. Curran, who is a resident of this state, testified for the government during the trial. No attempt was made by the defendants to interrogate him on this aspect of the matter. Moreover he could have been called as a witness by the defendants to establish the break in the defendants' warehouse and the resultant loss of its records if in fact such loss did occur. It is likely that the contents of the counter-affidavit of this witness filed by the government at the time of the hearing on these motions explains the course of action pursued by the defendants with respect to him. By no stretch of the imagination may it be said that the evidence concerning the nonproduction of the cost records is evidence "discovered since the trial" within the requirements laid down in Johnson v. United States, supra.

The same observation may be made with respect to the testimony which would be given by the affiant, Mr. Sigmund Baer.

A careful analysis of the affidavits of the defendant, Sullivan, and Mr. Irving J. Moritt convinces me that the testimony which the latter would give cannot be fairly regarded as "evidence discovered since the trial".

It will be remembered that in support of his earlier motion for a new trial the defendant Sullivan represented that since the introduction of Government Exhibit 18 he "for the first time had notice of the specific metals, weights, gauges and sizes and immediately thereupon sought out suppliers and has obtained evidence of said purchases, costs and amounts which would show no deficiency or tax due". If the contents of the affidavit of Sullivan are true these representations were manifestly false. No other conclusion is possible.

However, for the purpose of these motions I have assumed the contents of his affidavit to be true. Viewed in the most favorable light his affidavit discloses (1) that about two years ago, before the completion of the government's investigation of the return of the corporate defendant for the fiscal year ending June 30, 1948, he contacted Mr. Moritt to obtain the evidence which the latter has now professed a willingness to give; (2) that he did this, as he deposes, because "I know a substantial part of the sheeting sold to General Materials Corporation had been bought from Monroe Plumbing and Heating Supply Co., Inc. of New York City with whose President, Mr. Irving J. Moritt, I had made arrangements for the purchase of the material in 1946 for use on the government contracts"; (3) that after the return of the indictment he again contacted Mr. Moritt for the same purpose; (4) that on both occasions when he approached Mr. Moritt the latter told him that the records of Monroe Plumbing and Heating Supply Co., Inc. were not available and that he had no recollection of the transactions; (5) that subsequent to his conviction he was told by his attorney if he had been able to produce evidence of the cost of said materials the trial would have resulted in his acquittal; (6) that thereupon he immediately contacted Mr. Moritt again, told him of his conviction, and that the latter expressed his regret and to his great surprise stated he remembered the sales of metal sheeting to Berkshire Fabricators Co., Inc. and related the details as set forth

in the latter's affidavit filed in support of these motions.

Mr. Arabian in his affidavit deposes that Sullivan prior to the trial had informed him of his unsuccessful attempts to induce Mr. Moritt to furnish evidence as to said sales alleged to have been made by Monroe Plumbing and Heating Supply Co., Inc.

While it may be conceded that these affidavits show efforts on the part of the defendant Sullivan to obtain the evidence which he believed to be within the possession and knowledge of Mr. Moritt for use at the trial, this evidence cannot be said to be evidence "discovered since the trial". On the contrary, assuming the contents of Sullivan's affidavit to be true, I find merely a situation, not at all unusual in a trial, civil or criminal, where a potential witness informed as to certain matters or possessed of certain information, disclaims knowledge and is unwilling to appear and testify in court. The record of this case establishes conclusively that during the investigation of the 1948 tax return and during the trial the defendants were at all times represented by not one but by several competent and experienced attorneys. I cannot assume that these attorneys were unaware that upon their application under Rule 17 of the Federal Rules of Criminal Procedure the subpoena of this Court would issue compelling the appearance of Mr. Moritt as a witness at the trial. Nor can I assume that if summoned and placed under oath Mr. Moritt would have disclaimed all knowledge of the transactions which he now claims to remember so vividly.

█ It may also be observed that the defendant Sullivan states that he remembered the transactions to which Mr. Moritt would testify because he made the arrangements with him for the purchases. Admittedly this knowledge was his both prior and during the trial. Despite this fact he exercised his constitutional rights and declined to testify during the trial. It was his privilege to remain silent but he cannot now employ such silence as a basis for overturning the verdict of the jury.

█ I am further of the opinion that if the proffered testimony were regarded as "discovered since the trial" it is definitely not of such a nature as, on a new trial, would probably result in an acquittal of the defendants.

Assuming that Mr. Moritt would testify as indicated in his affidavit, his testimony would be to the effect that between August and December 1946 the corporation of which he was president sold and delivered plumbing supplies, aluminum and stainless steel sheet metals and other materials to Berkshire Fabricators Co., Inc. having an aggregate cost price of $362,716.40; that no copies of invoices or vouchers are available showing the description, quantities or selling prices of the various products so sold and delivered, but that the sum "of about $70,000 was for aluminum and stainless steel sheeting" within the sizes and gauges set forth in government's exhibit 18. He does not pretend to claim that the aluminum and stainless steel sheeting sold by his employer was the same aluminum and stainless steel sheeting sold to General Materials Corporation.

The transactions concerning which he would testify occurred during the fiscal year of the corporate defendant which ended on June 30, 1947. Its tax return for that period introduced at the trial as government's exhibit 4 shows that at the beginning of the taxable year it had no inventory with a value, that during said year (including the period between August and December 1946) its purchases of materials amounted to $1,825,219.64 and that its inventory at the close of the year was zero. After the deduction of the cost of materials purchased and other costs and expenses this return shows an adjusted net income of $326,452.72. This return was later reviewed by an internal revenue examiner whose report dated August 5,

1949 contains this observation "Very good records are kept and detailed vouchers are available for each transaction". No credible evidence was presented at the trial to indicate that this return was inaccurate. In fact, the record establishes that on October 10, 1949, the defendants used said return as the basis for filing a claim for a refund of $33,-331.37 of the taxes paid on said return as a net operating loss carry-back under the provisions of the Internal Revenue Code.

I am satisfied that the purchases to which Mr. Moritt would testify were included by the corporate defendant in the purchases of $1,825,219.64 shown in its return for the year ending June 30, 1947 and were deducted in determining its adjusted net income. To hold otherwise would be an absurdity and without any basis in reason or fact.

One of two conclusions is inescapable—either the cost of the metals sold to General Materials Corporation was deducted as a cost of materials bought in the 1947 tax return, even though not actually used during said year, leaving no cost basis properly chargeable in the year sold, or said metals came from a source other than the Monroe Plumbing and Heating Supply Co., Inc. which the defendants for reasons best known to themselves did not during the trial and do not now care to disclose.

Having in mind all the testimony, both direct and circumstantial, presented at the trial and the reasonable inferences to be properly drawn therefrom, I do not believe that the proffered testimony as to the cost of the metals sold to General Metals Corporation to be of such a nature that, on a new trial, would probably result in an acquittal of the defendants.

I am entirely convinced that the alleged newly discovered evidence does not meet the basic requirements to warrant my granting the defendants a new trial. For me to disturb the verdict of the jury would in my considered judgment be a mockery of justice.

The motion of each defendant for a new trial upon the ground of newly discovered evidence is denied.