**UNITED STATES of America,**
**Plaintiff,**
**v.**
**Jack Wayne LYLES, Defendant.**
**Crim. No. 13038.**

United States District Court
S. D. Texas,
Houston Division.
June 16, 1959.

William B. Butler, U. S. Atty., and Norman W. Black, Asst. U. S. Atty., Houston, Tex., for plaintiff.

William F. Walsh, Houston, Tex., for defendant.

INGRAHAM, District Judge.

The defendant, Jack Wayne Lyles, was convicted of the offense of unlawful interstate transportation of approximately $22,000 United States currency, knowing the same to have been stolen (violation Title 18, Section 2314, United States Code) by trial and verdict of the jury rendered May 1, 1957, and was duly sentenced May 10, 1957, to imprisonment for a period of eight years. Appeal from the conviction was affirmed by the Court of Appeals, per curiam, December 10, 1957, reported 5 Cir., 249 F.2d 744.

Defendant filed on April 20, 1959, his motion for new trial, claiming newly discovered evidence. This memorandum opinion is addressed solely to such motion and supplement filed thereto on May 6, 1959.

Attached to the motion for new trial, as basis therefor, is the affidavit of Jack Edwin Hill, victim of the alleged robbery, stating that he was robbed by two men in the St. Francis Hotel, New Orleans, Louisiana, but that Lyles was not one of them. It is established that Hill had earlier obtained the money by robbing a bank in Oregon and is now serving a sixteen year sentence therefor in the United States Penitentiary at Atlanta, Georgia. Lyles is serving his sentence in the United States Penitentiary at Leavenworth, Kansas.

We should examine the claim of Lyles that the disclosure of Hill's affidavit is newly discovered evidence. It is the opinion of the court that it is not. Hill attended the trial of Lyles and was available to be called as a witness by either side. His presence at the trial was well known. During the course of the trial he was called into the courtroom at least five times to be identified before the court, jury and defendant by the witnesses Rafferty, Gardner, McCarthy, Zuniga and Grouches.

The case against Lyles, briefly stated, is that in August 1955 Evelyn McCarthy, a prostitute, told Lyles and her husband, Ralph McCarthy, that Hill (alias Peterson), with whom she was consorting in a Houston, Texas, hotel, had with him large sums of money and that he had asked her to accompany him to Lake Charles, Louisiana. She accompanied him. They went instead to New Orleans, Louisiana. They were followed by Lyles, Ralph McCarthy and Doris Andrews Grouches. From the evidence adduced at the trial, Lyles and Ralph McCarthy robbed Hill of approximately $22,000 in a room at the St. Francis Hotel in New Orleans, Louisiana; then Lyles, Ralph McCarthy, Evelyn McCarthy and Grouches fled with the money, and with each other, to Houston, Texas.

The effect of Hill's affidavit is that he went from Houston to New Orleans with Evelyn McCarthy, that they took a room at the St. Francis Hotel, that someone knocked at the door, that two men entered, both with pistols, who ordered him

to lie on the floor and who ransacked the room, that one slugged him, that they left with the money; that he saw Lyles at the trial and that Lyles is not one of the men who robbed him.

In Lyles' motion for new trial he asserts his innocence. If Lyles is innocent, he knew at the time of the trial that he was not one of the men who robbed Hill in New Orleans on or about August 29, 1955. And if he is innocent, he knew that Hill knew that he was not one of the robbers. If he is in fact innocent, the newly discovered evidence now claimed was all well known to him at the trial. It can be no surprise to him. With such knowledge, he let Hill, the victim of the robbery, walk in and out of the courtroom at least five different times during the trial and not once did he call Hill to the witness stand, have him sworn and ask him, "Have you ever seen me before?", "Am I one of the men who robbed you in New Orleans?". It would seem to be the natural thing for one, confident of his innocence, to do. The motion recites that the lawyer who represented Lyles at the trial interviewed Hill but that Hill refused at the time to help the defense, for the reasons stated therein. But this does not alter the fact that the evidence, now claimed to be newly discovered, is not newly discovered. One has the right to call an unwilling or reluctant witness to the stand, have him sworn and challenge him to tell the truth.

In United States v. Berkshire Fabricators Co., D.C.R.I.1955, 17 F.R.D. 44, 47, the proffered testimony of several witnesses known to defendant at the time of trial was not considered newly discovered evidence. A report by a former government witness at the trial, proffered by defendant on motion for new trial, was not held to be newly discovered evidence. Regarding this witness, the court stated:

"* * * No attempt was made by the defendants to interrogate him on this aspect of the matter. Moreover he could have been called as a witness by the defendants to establish the break in the defendants' warehouse and the resultant loss of its records if in fact such loss did occur. * * * By no stretch of the imagination may it be said that the evidence concerning the nonproduction of the cost records is evidence 'discovered since the trial' within the requirements laid down in Johnson v. United States, supra [8 Cir., 32 F.2d 127]." Berkshire, supra, at page 47.

With regard to the proffered testimony of other affiants, the court stated:

"While it may be conceded that these affidavits show efforts on the part of the defendant Sullivan to obtain the evidence which he believed to be within the possession and knowledge of Mr. Moritt for use at the trial, this evidence cannot be said to be evidence 'discovered since the trial'. On the contrary, assuming the contents of Sullivan's affidavit to be true. I find merely a situation, not at all unusual in a trial, civil or criminal, where a potential witness informed as to certain matters or possessed of certain information, disclaims knowledge and is unwilling to appear and testify in court. The record of this case establishes conclusively that during the investigation of the 1948 tax return and during the trial the defendants were at all times represented by not one but by several competent and experienced attorneys. I cannot assume that these attorneys were unaware that upon their application under Rule 17 of the Federal Rules of Criminal Procedure [18 U.S.C.A.] the subpoena of this Court would issue compelling the appearance of Mr. Moritt as a witness at the trial. Nor can I assume that if summoned and placed under oath Mr. Moritt would have disclaimed all knowledge of the transactions which he now claims to remember so vividly." Berkshire, supra, at page 48.

In United States v. Bertone, 3 Cir., 1957, 249 F.2d 156, Judge Maris stated:

88

" * * * It is clear that the witnesses referred to in the defendant's quoted grounds for a new trial, Ovanessian, Kotangian and Radford, were known to the defendant prior to the trial. It is also clear that he believed that they would be favorable to his defense and he states that he requested his counsel to produce them as defense witnesses but that 'Apparently, no attempt was made by defense counsel to call these witnesses or to procure their testimony.' The defendant asserts that at a new trial these witnesses would be produced to testify in his defense.

"The defendant was represented at the trial by counsel of his choice and is bound by his decisions as to the trial strategy. * * * The fact that the defendant now believes that he can obtain the presence and testimony of favorable witnesses whom his counsel knew of but did not call at his trial cannot by any stretch of the imagination come under the category of newly discovered evidence." Bertone, supra, at page 160.

■ On May 6, 1959, defendant filed supplement to motion for new trial, with which he filed copy of the July 1957 issue of "True Police Cases", a monthly magazine, calling particular attention to an article therein, commencing on page 18, entitled "I Was Born To Do Wrong" by Doris Andrews. The author, Doris Andrews, is the same and identical person as Doris Andrews Grouches, a witness who testified at the trial. Attention is directed to discrepancies between the magazine article and her testimony. We must base our consideration upon her sworn testimony in court and not upon the magazine article written, presumably, for profit to the author and entertainment to the reader.

The magazine article would only be evidence that could serve to impeach further a witness whose credibility had already been drawn into question at the trial by her admitted prior inconsistent statements to defendant's attorney. (Tr. pgs. 129–130, 133, 137–157). Grouches admitted on the stand that she had made everything up as she went along in that conversation with defendant's attorney and that everything in that conversation was "pure fiction". Her only excuse for these inconsistent statements was that she was afraid of defendant. One of her inconsistent statements to defendant's attorney was that she had told the F.B.I. that she remembered no trip she ever made in August of 1955 to New Orleans with defendant. (Tr. pgs. 141–142). This statement would seem totally inconsistent with the testimony she gave on trial concerning the robbery and transportation of the stolen money. The jury convicted defendant, nevertheless, though Grouches was one of the two star witnesses. The statements made in the magazine article seem inconsistent with some points of her testimony, but it is submitted that these inconsistencies are only of a further impeaching and cumulative nature that would only increase in the minds of the jury doubts that they were already justified in maintaining. In fact, these statements, dealing with detailed circumstances of the crime, do not seem as totally inconsistent as her prior inconsistent statements to defendant's attorney.

■ It is the general rule that newly discovered evidence which is merely impeaching or cumulative in character does not warrant the granting of a new trial. 4 Barron and Holtzoff Federal Practice and Procedure (1951), § 2282, at pg. 286. Even where defendant produces a recanting witness on motion for new trial, the court still has discretion to decide whether it believes that the witness' testimony at trial, subsequent recantation, or neither of them were true and whether the jury could have been at all justified in believing the witness' testimony. Even if the witness is not entitled to be believed, the testimony on the whole record, discounting completely the recanting witness' testimony, may be so convincing that a new trial probably would not produce an acquittal. It is interesting to

compare the conclusions reached by different courts on the effect of Harvey Matusow's recantation of his testimony in various internal security cases. In Jencks v. United States, 5 Cir., 1955, 226 F.2d 553, the court of appeals upheld the finding of Judge Thomason on motion for a new trial that Matusow's former testimony at trial was "substantially true" and that his recantation was corruptly false. In contrast, the district court in United States v. Flynn, D.C.S.D.N.Y. 1955, 130 F.Supp. 412, 415, concluded that Matusow was a "completely irresponsible witness * * * without regard for truth, with a passion for the limelight and the need for a few dollars. * * * Which was the lie, the original story or the retraction?" The court relied on the development of Matusow's testimony on trial to demonstrate its falsity, rather than upon the subsequent events surrounding his recantation which Judge Thomason considered in concluding that the retraction was false. Essentially though the Fifth Circuit maintained that Matusow's testimony was mainly cumulative, as "there was ample evidence before the jury at the trial to warrant a conviction without the testimony of Matusow." Jencks v. United States, supra, 226 F.2d at page 560. In the Flynn case, though, it appears that Matusow's testimony was so vital and uncorroborated with respect to the two defendants granted new trials that the court felt that they would not have been convicted without it. United States v. Flynn, supra, 130 F.Supp at page 422, and Jencks v. United States, supra, 226 F.2d at page 559. Cited on page 3 of the government's answer, the Jencks case was reversed and remanded by the Supreme Court 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 on grounds not involving the denial of the motion for new trial.

The recantation cases pose the extreme position on the question of whether impeaching evidence would warrant the granting of a new trial. In the case at bar the subsequent inconsistent statements are not direct recantations of testimony at trial and thus do not squarely pose the question of whether the witness is entitled to be believed at all. As such, they fall within the general rule that newly discovered evidence which is merely impeaching or cumulative in character does not warrant the granting of a new trial. Furthermore, it appears from the record that there was sufficient corroborating evidence in the testimony of Evelyn McCarthy, employees at the various hotels involved, and persons connected with various places where Lyles spent or deposited money, before the jury to warrant a conviction without the testimony of Grouches.

There is some indication, moreover, that defendant's attorney was on notice that Grouches was having interviews with reporters and a magazine writer, Stan Redding, concerning spectacular events in her life. Defendant might have called such writers to the witness stand at trial to determine any inconsistencies between the stories Grouches was giving them and the testimony that she gave at the trial. Defendant's counsel brought up these interviews in cross-examination of Grouches but did not develop the point beyond general inquiries concerning the nature of the articles. (Tr. pg. 154). Thus there is a possibility that defendant was aware that such an article as the one herein involved was being written and may have anticipated that it would soon be published. On this ground it would seem that this article has not been discovered since the trial, though it was published in the July 1957 issue, two months after the conclusion of the trial.

For the reasons stated, it is the opinion of the court that defendant's motion for new trial filed April 20, 1959, and his supplement to motion for new trial filed May 6, 1959, are each, jointly and severally, without merit in law and should be dismissed.

The clerk will notify counsel to draft and submit appropriate order.